IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MINETOLA, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-1677 |
| v. | (JUDGE CAPUTO) |
| COMMONWEALTH TELEPHONE COMPANY and COMMONWEALTH TELEPHONE ENTERPRISES, INC., t/d/b/a COMMONWEALTH COMMUNICATIONS, | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is Defendant Commonwealth Telephone Enterprises, Inc., t/d/b/a Commwealth Communications' ("CTE") Motion for Summary Judgment as to Counts II and III of Plaintiff's Complaint. (Doc. 18.)  For the reasons set forth below, CTE's motion will be granted.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a).

## **BACKGROUND**

The facts presented in the summary judgment record, viewed in the light most favorable to Plaintiff, are as follows.  Plaintiff was born on June 25, 1955. (Def.'s Statement of Material Facts, "SMF", ¶ 1, Doc. 20 at 1.)  Plaintiff was employed by Defendant Commonwealth Telephone Company ("CTC"), a subsidiary of CTE (*see* Def.'s Resp. ¶ 4, Doc. 32 at 1), as a sales manager, strategic accounts, from May 1, 2002 through May 30, 2003. (*Id.* ¶ 2.)

Effective June 1, 2003, Plaintiff was reassigned from his position with CTC as

sales manager, strategic accounts, to the position of senior account executive with CTE. (*Id.* ¶ 3.)  CTE contends that Plaintiff's reassignment was due to his poor performance and leadership skills. (*Id.*)  Plaintiff disputes this contention (Pl.'s Resp. ¶ 3, Doc. 29 at 1-2), pointing to the facts that he achieved one hundred forty-seven percent (147%) of his revenue goal and there was no indication in his first and second quarter reviews that his position with CTC was in jeopardy. (Doc. 29-4 at 6.)  Plaintiff notes that his supervisor at CTC, Elena Kilpatrick, never put him on a performance improvement plan prior to his being reassigned. (Pl.'s Counterstatement of Undisputed Facts, "SMF", ¶ 8, Doc. 29 at 5.)  Conversely, Kilpatrick testified that she was dissatisfied with Plaintiff's performance, which she characterized as merely "average." (Kilpatrick Dep. 89:19-90:1, Doc. 29-3 at 4.)  Kilpatrick testified that she verbally coached Plaintiff prior to his reassignment. (Pl.'s SMF ¶ 10.)  Plaintiff does not dispute this testimony, but instead contends that there is no documentation of her verbal coaching of him. (*Id.*)  Kilpatrick's testimony is supported by a February 2003 performance review which outlined areas in which Plaintiff needed to improve, namely personal and leadership development. (*See* Doc. 29-4 at 6.)

Plaintiff testified that his position with CTC was filled by Ed Weirich, who was thirty-two (32) years of age at the time. (Minetola Dep. 29:12-25, Aug. 30, 2006, Doc. 29-2.)  This is supported in the record as Plaintiff has offered into evidence a document which shows that Weirich was promoted from strategic account executive to sales manager on June 8, 2003, only a few days after Plaintiff's reassignment. (*See* Doc. 29-7.)

As a result of his reassignment, Plaintiff's salary was reduced from seventy-five thousand dollars ($75,000) to sixty-five thousand dollars ($65,000). (Pl.'s SMF ¶ 13.)  However, this was "substantially more" than CTE paid its other sales representatives.

(*See* Doc. 30-3 at 16.)  Plaintiff also had the opportunity to earn more than his salary by reaching or exceeding his sales quota. (*See* Doc. 29-4 at 8.)

On June 18, 2003, Plaintiff's new supervisor at CTE, Steven Letts, sent Plaintiff an email requesting a forecast of the potential revenue for product sales, stating "make sure it's doable.  I don't want pie in the sky data.  You and the others selling the product will be held to this goal." (Pl.'s SMF ¶ 15.)  Letts further stated "you have one quarter to demonstrate the value you bring to the organization.  If you are not able to do this, we will have to revisit your long term involvement with [CTE]." (*Id.*)  Plaintiff sent Letts an email forecasting the following sales revenue:

| Month | Amount |
| --- | --- |
| July | 0 |
| August | 25,000 |
| September | 75,000 |
| October | 100,000 |
| November | 100,000 |
| December | 100,000 |
| **Total** | **$400,000** |

(Doc. 30-3 at 16.)

Two days later, Letts emailed Plaintiff stating that Plaintiff's sales forecast was too low and told Plaintiff and another sales representative that their sales quotas would be one hundred twenty thousand dollars ($120,000) per month. (Pl.'s SMF ¶ 16.)  This one hundred twenty thousand dollar ($120,000) per month sales quota was the same for every other sales representative. (*Id.* ¶ 24.)  However, Plaintiff asserts that other sales representatives had an assigned account base of between fifty (50) and two hundred (200) accounts from which to satisfy their quotas, while he "did not receive one qualified

lead from [CTE]." (*Id.* ¶ 24.)  CTE explains that it accounted for this by relieving Plaintiff of a recurring sales quota all other sales representatives had to achieve. (Doc. 30-3 at 17.) Plaintiff does not dispute this.  CTE also relieved Plaintiff of his one hundred twenty thousand dollar ($120,000) nonrecurring quota for June and July of 2003. (*Id.* at 14.) CTE also notes that it had a formal "lead generation" program specifically to benefit Plaintiff and other sales representatives. (*Id.* at 13.)  CTE also points to the fact that Plaintiff did not complain at the time but, rather, expressed his belief that he would be successful in his new role. (*Id.* at 17.)

>In his deposition, Letts explained Plaintiff's situation with CTE as follows:
>
>> Well, I gave John one quarter.  When we first met, when John came over to me mid-year 2003, he and I had our first conversation, and I explained to John that, you know, this was an opportunity for both of us and that within the first quarter I was expecting to see solid performance; and if that- - if I didn't see it, given the fact that I was one head count over budget doing this, that I'd be left with no alternative but to put John under a performance plan; and hopefully, he'd get healthy, but if he didn't, then I would have to terminate him.

(Pl.'s SMF ¶ 21.)

From July through November 2003, Letts repeatedly suggested to Plaintiff that he begin looking for another job and to reconsider whether he was best-suited for a career in sales. (*Id.* ¶ 22.)  Indeed, Plaintiff's sales total was zero dollars ($0) for June, August and September of 2003. (*See* Doc. 30-3 at 15.)  Plaintiff's sales for July and October 2003 were only two thousand dollars ($2,000) and six thousand dollars ($6,000) respectively. (*See id.*)  Plaintiff's November 2003 sales total was forty thousand dollars ($40,000), well below his monthly quota of one hundred twenty thousand dollars ($120,000). (*See id.*)

On December 5, 2003, Plaintiff was given a written performance improvement plan. (Def.'s SMF ¶ 5.)  Plaintiff was given a December sales quota of six hundred seventy-three thousand three hundred twenty-three dollars ($673,323). (Pl.'s SMF ¶ 27.) This figure represented the total amount of unreached sales quotas since Plaintiff joined CTE in June 2003. (*Id.*)  Letts admitted that he did not believe that Plaintiff could reasonably have met this sales quota. (*Id.* ¶ 31.)

CTE asserts that Plaintiff was placed on a performance improvement plan as a result of Plaintiff's poor performance. (Def.'s SMF ¶ 5.)   Plaintiff disputes this assertion. (Pl.'s Resp. ¶ 5.)  However, Plaintiff does not dispute the sales figures reported by CTE and admits that he did not meet the quota required by the performance improvement plan. (*Id.* ¶ 6.)  Plaintiff points to the fact that he met his quota for December 2003 by achieving sales in the amount of one hundred twenty-eight thousand dollars ($128,000). (*See* Doc. 30-3 at 15.)  In fact, for a seventeen (17) day period in December 2003, he was the company leader in sales-dollars generation. (Pl.'s SMF ¶ 32.)  However, Plaintiff's strong December 2003 performance was the result of "primarily one deal." (Doc. 30-3 at 15.)  In fact, Plaintiff's sales total of one hundred seventy-six thousand dollars ($176,000) was not even one-half of the sales forecast of four hundred thousand dollars ($400,000) he himself predicted for the third and fourth quarters of 2003. (*See id*. at 15-16.)

Based on Plaintiff's forecasts for 2004 and Letts' analysis of Plaintiff's sales funnel, Letts predicted that Plaintiff "would likely not close anything significant during the first quarter of 2004." (*Id.* at 15.)  Thus, on January 16, 2004, Plaintiff was informed by

5

CTE that his employment would be terminated, effective January 31, 2004. (Def.'s SMF ¶ 4.) Plaintiff was forty-eight (48) years old at the time he was terminated. (*Id.* ¶ 7.)

Plaintiff contends that the tasks which he formerly performed were carried out by six (6) individuals whose ages ranged from twenty-five (25) to forty-seven (47) years of age and who were hired between March of 2005 and October of 2006. (Pl.'s SMF ¶ 42.) Specifically, Plaintiff offers the affidavit of Neil Terrence McManamon, an account representative at CTE, in which McManamon avers:

> I have first hand knowledge that after John Minetola was terminated in January of 2004, [CTE] hired six (6) persons who were tasked to perform duties substantially similar to that previously performed by Mr. Minetola. These persons are Larry Harsch who was hired as a Sales Representative & Sales Manager on or about [March 2005], whose age was approximately 47 at the time he was hired; John Gilbert, who was hired as an Account Executive on or about [March 2006], whose age was approximately 41 at the time he was hired; Darry Voss, who was hired as an Account Executive on or about [September 2006], whose age was approximately 40 at the time he was hired; and, Ty Van Zant, who was hired as an Account Executive on or about [November 2005], whose age was approximately 29 at the time he was hired, Mark Donnley, who was hired as an Account Executive on or about [March 2006], whose age was approximately 44 at the time he was hired, Justin Detrich, who was hired as an Account Executive on or about [October 2006], whose age was approximately 25 at the time he was hired.

(McManamon Aff. ¶ 2, Mar. 2, 2007, Doc. 29-8.)

Conversely, Letts stated in his deposition that "nobody" replaced Plaintiff because CTE was "one head over head count when we took [Plaintiff] on" and Letts "wasn't going to go out and see if [he] could get another head to come in at that point in time." (Letts Dep. 118:21-119:6, Nov. 13, 2006, Doc. 19.) Letts also averred in an affidavit that the individuals Plaintiff alleges replaced him were not hired to replace Plaintiff, but, rather, were hired to grow CTE's business. (Letts Aff. ¶ 4, Mar. 8, 2006, Doc. 31.)

Plaintiff also stated that William Reinhart, a fellow sales representative who was forty-six (46) years of age, was not terminated until nine (9) months after being put on a performance improvement plan. (Pl.'s SMF ¶ 37.)  Reinhart, like Plaintiff, failed to meet his sales quota by a significant margin, achieving a sales total of two-hundred eighty-five thousand dollars ($285,000) over a period of ten (10) months. (Doc. 30-3 at 26.) Reinhart's sales represented twenty-four percent (24%) of his one million two hundred thousand dollar ($1,200,000) quota. (*Id.*)  Cheryl Summa, age forty-five (45), was placed on a performance improvement plan on December 8, 2003, and was not terminated by CTE, but, rather, voluntarily left the company in January of 2005. (*Id.* ¶ 38.)  Summa achieved sales totaling eight hundred forty-six thousand dollars ($846,000) over the course of the 2003 calendar year. (Doc. 30-3 at 26.)  This figure represented fifty-nine (59%) percent of Summa's one million four hundred forty-four thousand dollar ($1,440,000) sales quota for 2003. (*Id.*)

During his deposition, Plaintiff admitted: (1) he was not aware of any incident in which CTE discriminated against any other employee because of age; (2) management or executive personnel of CTE never said anything to him of a discriminatory nature; and (3) other than Plaintiff's reassignment and termination, there was nothing done that he would consider evidencing any discriminatory animus on the part of CTE. (Minetola Dep. 53:5-54:15, Aug. 30, 2006, Doc. 19.)

On August 16, 2005, Plaintiff filed a Complaint in this Court alleging that his reassignment and termination were the result of age discrimination in violation of the federal Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*., as well as the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. Ann. § 951 *et seq*. (Doc. 1.)

On February 15, 2007, CTE filed a motion for summary judgment as to Counts II (ADEA claim) and III (PHRA claim) of Plaintiff's Complaint. (Doc. 18.)  CTE filed its Brief in Support and Statement of Material Facts the same day. (Docs. 19 and 20.)  On March 5, 2007, Plaintiff filed his Brief in Opposition and Answer to Statement of Facts (Docs. 28 and 29.)  CTE filed a Reply Brief on March 19, 2007. (Doc. 31.)  Consequently, this motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient

showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

CTE now moves this Court to grant it summary judgment as to Counts II and III of Plaintiff's Complaint. CTE argues, first, that Plaintiff has failed to establish a *prima facie* case of age discrimination because, after Plaintiff was terminated, he was not replaced by anyone, let alone someone sufficiently younger to create an inference of age discrimination. Alternatively, CTE argues that, even assuming Plaintiff has established a *prima facie* case, CTE has articulated legitimate, non-discriminatory reasons for reassigning and then terminating Plaintiff's employment, reasons which have not been rebutted. (Def.'s Mot. 1, Doc. 18.)

Under the ADEA, an employer is prohibited from discharging an individual because of such individual's age. 29 U.S.C. § 623(a)(1).[1]  A plaintiff may establish an age discrimination in employment claim using direct or indirect evidence. *Seibel v. Marketplace Direct, Inc.*, No. 2:05CV684, 2007 WL 788384, at *1 (W.D. Pa. Mar. 13, 2007).  A direct evidence case of age discrimination in employment exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989)).  The instant matter is not a case involving direct evidence of discriminatory animus.

Rather, in a case such as this one where there is no direct evidence of age discrimination, a plaintiff may still prevail by presenting circumstantial evidence under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, when a plaintiff alleges that he was unlawfully discharge based on his age, he must first establish a prima facie case of age discrimination by proving, by a preponderance of the evidence, that: (1) he was a member of the protected class, i.e., he was over forty (40) years of age; (2) he was qualified for the position; (3) he was discharged; and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. *Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 234 (3d Cir. 1999); *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973-74 (3d Cir. 1998).

---

[1] The same legal standard applies to a claim under the PHRA as applies to an ADEA claim. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005).  As such, the Court's analysis is coextensive.

Once a plaintiff establishes a *prima facie* case of age discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision to discharge the plaintiff. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 319 (3d Cir. 2000) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981)).  "If the employer is able to proffer a legitimate, nondiscriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination." *Id.*  Specifically, the plaintiff must point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  The United States Court of Appeals for the Third Circuit explained that "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons, was either a *post hoc* fabrication or otherwise did not actually motivate the employment action . . . ."*Id.* (internal citations omitted).  The plaintiff may do this by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765.

Here, even assuming Plaintiff's evidence established a *prima facie* case of age discrimination, CTE has offered legitimate, nondiscriminatory reasons for both its

decision to reassign Plaintiff and its decision to terminate Plaintiff.[2]  CTE contends that Plaintiff was reassigned from his position as sales manager to the position of senior account executive because of deficiencies in his performance and poor leadership skills. Kilpatrick testified as such, stating that she was unsatisfied with Plaintiff's performance. (*See* Kilpatrick Dep. 89:19-90:1.)  This is supported by Plaintiff's February 2003 performance review. (*See* Doc. 29-4 at 6.)  As for his termination, CTE contends that it terminated Plaintiff's employment because Plaintiff, who was paid more than all other sales representatives, consistently failed to meet his sales quotas.

Plaintiff has failed to offer sufficient evidence that CTE's articulated reasons are pretextual.  Specifically, there is insufficient evidence that would allow a reasonable jury to reject CTE's reasons for its actions and instead conclude that intentional, age-based discriminatory animus was CTE's true motivation. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

While Plaintiff may have exceeded his revenue goals, his supervisor, Kilpatrick, testified that his performance was "average" relative to her other sales managers. Moreover, Kilpatrick believed that Plaintiff needed to improve his personal and leadership skills.  Plaintiff failed to heed Kilpatrick's verbal coaching, which, while not documented, Plaintiff does not dispute occurred.

---

[2]CTE contends that it can only be liable for its decision to terminate Plaintiff, not CTC's decision to reassign Plaintiff to CTE.  However, Plaintiff argues that both employment actions "were part of a thinly veiled process to ultimately discharge [him] on account of his age." (Pl.'s Br. In Opp. at 10.) Moreover, CTE admits that it controlled some of the operations, finances, and management and personnel decisions of CTC. (Def.'s Resp. ¶ 4.)  As such, the Court will address both Plaintiff's demotion and termination claims for purposes of CTE's present motion. *See Marzano v. Computer Science Corp.*, 91 F.3d 497, 514 (3d Cir. 1997).

Once at CTE, Plaintiff was paid at a higher rate of compensation than all other sales representatives. Nonetheless, Plaintiff failed to satisfy even his own sales forecast, characterized by Letts as "too low," let alone meet the sales quota imposed upon every other sales representative. Plaintiff had months in which he secured no sales at all. While Plaintiff improved his sales figures for December 2003, Letts predicted that Plaintiff would not close any significant sales in the first quarter of 2004. Consequently, CTE terminated Plaintiff. It is not for the Court to second guess an employer's decision. *See Pamintuan v. Nanticoke Memorial Hospital*, 192 F.3d 378, 386 (3d Cir. 1999).

The fact remains that Plaintiff has failed to present any evidence from which a reasonable factfinder could rationally conclude that CTE's proffered legitimate reasons for reassigning and terminating Plaintiff were pretextual. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc) (plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason"). As such, the Court will grant CTE's motion for summary judgment as to Counts II and III of Plaintiff's Complaint.

## CONCLUSION

For the reasons mentioned above, the Court will grant Defendant Commonwealth Telephone Enterprises, Inc., t/d/b/a Commwealth Communications' ("CTE") Motion for Summary Judgment as to Counts II and III of Plaintiff's Complaint. (Doc. 18.)

An appropriate Order follows.

| | |
|---|---|
| May 10, 2007 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN MINETOLA, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-1677 |
| v. | (JUDGE CAPUTO) |
| COMMONWEALTH TELEPHONE COMPANY and COMMONWEALTH TELEPHONE ENTERPRISES, INC., t/d/b/a COMMONWEALTH COMMUNICATIONS, | |
| Defendants. | |

## **ORDER**

**NOW**, this ___10th___ day of May, 2007, **IT IS HEREBY ORDERED** that Defendant Commonwealth Telephone Enterprises, Inc., t/d/b/a Commwealth Communications' ("CTE") Motion for Summary Judgment as to Counts II and III of Plaintiff's Complaint (Doc. 18) is **GRANTED**.

                                                                             /s/ A. Richard Caputo
                                                                             A. Richard Caputo
                                                                             United States District Judge